Please rise. This court is now in session. Please be seated. Thank you. Will the clerk please call the first base in the morning? 322-0292, the people of the state of Illinois, by Scott Pyle v. Carl Ferrell, accounted by John Pardolo. Counsel, you may proceed. Good morning, Your Honors. May it please the court, counsel, and assembled members of the audience. My name is John Pardolo, and I represent Carl Ferrell, who is the appellant in this case. Mr. Ferrell is a 41-year-old African-American male, a resident of Will County. He's currently a father, a union plumber, an activist, and civically engaged in his community. When Mr. Ferrell was younger, he was the subject of three felony cases, two in Will County and one in Cook. All of those cases were drug-related. I had felony convictions in each of those cases. What were those felony convictions for? They were for possession of drugs. The final one in Will County was for possession, and he was charged with a UUW, an unlawful use of a weapon. When the police entered the home, there were six people in the living room. He was on the floor, several other people sleeping on the floor. There was a gun underneath the sofa. Since he was the closest one to it, they charged him with that. No use of the weapon, no violent crimes. They were all drug-related with the addition of that particular crime. Just possession? Simple possession? Correct, correct. Not with intent to sell? No, not true. One of the, I'm sorry, two of the convictions were with intent, correct, to deliver. Okay, so it's not just possession. Correct. Okay, thank you. The last conviction was in 2010. Mr. Farrell has served all of the sentences that were levied. He's served all supervisory and probationary requirements, and all of those were completed more than 12 years ago. In the fall of 2020, Mr. Farrell, who is civically engaged in his community, sought to become a candidate for Joliet Township trustee. He pursued the candidacy, he was nominated, he got his name on the ballot, he campaigned, and he was elected as a Joliet Township trustee in the municipal election in April of 2021. At no time between the time he sought the candidacy and the time he was elected in April of 2021 were there any objections to his candidacy or any complaints filed. Mr. Farrell was elected and then took office in May of 2021. To this day, other than the quo warranto action filed by the state's attorney in this case, there has never been a complaint or any objection filed to Mr. Farrell's candidacy, election, or his service in office. Mr. Farrell served from May 2021 until today, where he still serves, with some voluntary refraining from some of his duties after the state's attorney made some threatening comments and remarks and letters to the supervisor of the township, basically saying Mr. Farrell is not eligible, he should step down, don't pay him. As a matter of fact, because of the state's attorney's request, they suspended Mr. Farrell's pay for several months during the pendency of this case. In March of 2022, the state's attorney of Will County filed a quo warranto complaint. That was preceded by several months of requests that Mr. Farrell, requests slash demands that Mr. Farrell resign from the position because he was allegedly ineligible. The state's attorney sought a preliminary injunction in the TRO to remove Mr. Farrell immediately from the bench. Mr. Farrell contested those things and won. I'm sorry, did I say from the bench? I apologize. From his position. He filed an answer in the case and he raised three affirmative defenses. His affirmative defenses were latches. Secondly, the unconstitutionality of the statutory scheme in which the state's attorney deemed Mr. Farrell ineligible for the office. And finally, Mr. Farrell has and still has pending, pending petition before the governor for a pardon slash restoration of rights. So that petition is still pending. His original hearing was set for July 12th before the Prisoner Review Board and that has been continued because of some tumult with the Prisoner Review Board and that hearing is presently scheduled for this week, Thursday, October 6th on the petition for a pardon. Each of the affirmative defenses provides a sufficient basis all on its own to reverse the trial court and keep Mr. Farrell in office. The trial court on an accelerated schedule invited cross motions for summary judgment. There was a very limited discovery in the case. The cross motions were submitted and the trial court ruled denying Mr. Farrell's motion for summary judgment on all three of the affirmative defenses and granting the state's motion for summary judgment and entered an order on June 24th that declared the office vacant and declared Mr. Farrell ineligible because of his felony convictions to hold the office. At the hearing for the motion on summary judgment, the state's attorney for the first time raised the defense that Mr. Farrell failed to comply with rule, Supreme Court Rule 19 in failing to give proper notice based on his claim of unconstitutionality. That was the subject of a motion to reconsider. Shortly after the issue was first raised by the state's attorney, notice was given directly to the attorney general by letter. That letter is part of the record. That notice was given on June 27th and incorporated into the motion to reconsider. The trial court heard the motion to reconsider and ruled that the motion to reconsider was improper, that notice was required under Rule 19, although notice had been given, it was late and it did not comply with Rule 19. And based on that ruling, the trial court declined to further consider the constitutionality arguments raised by Mr. Farrell. So the trial court ultimately made a ruling on affirmative defenses 1, latches, and 3, the pending petition for a pardon or restoration of rights before the governor, and declined to make a ruling, a substantive ruling on the second affirmative defense, which is our claim of unconstitutionality. There are two red herrings in this case, and I'll get to them in order as I go, but the first red herring is a defense of unclean hands that's been raised by the state to defeat the latches argument. That is the first red herring, and I'll address that in just a moment. The second red herring is the Supreme Court Rule 19, which is a violation. Both of those things, again, are red herrings and the court should disregard them. They're not properly decided, and I'll explain in just one moment. First, I'll address the latches argument. Defendant has raised latches as an affirmative defense to the Quo Varento claim. Latches, as the court no doubt knows, is originally an equitable defense. There's a long line of cases in the last 20 or 25 years here in Illinois that provide that latches can also be used as a defense in legal claims. Specifically, and I've cited these cases in my brief, the courts have held that latches is a proper defense in a Quo Varento action. Now, there are cases out there that say that latches cannot be raised against the government, when they file a Quo Varento. However, there is one case that finds that there is an exception. That case, People-Exwell-Hanrahan v. Whelan, holds that latches can be used if two things are present. One, there's an inexcusable delay by the bringer of the Quo Varento complaint coupled with public acquiescence. Secondly, the judgment of Oster, if entered, has to cause and will result in great public inconvenience and detriment. We argued before the trial court, and the trial court rejected this argument, that both of those elements are present here. First, the state's attorney took almost one year from the time Mr. ... let me back up ... 18 months from the time Mr. Farrell placed his name in nomination, sought the candidacy, received the candidacy, got his name on the ballot, and pursued election to the position of Joliet Township Trustee. I would tell you that that is part of the broad range of things that he has in his toolbox, Judge. Is it first, second, or third on the list of things that the state's attorney pays attention to? I would suggest probably not. But he has, in the statute, gives the state's attorney authority to bring a Quo Varento action. Therefore, I would tell you that, yes, he has some responsibility for looking at candidacies, and perhaps not everyone who seeks a candidacy, but once they are the candidate, once they have been nominated, once they have their name on the ballot, and once they begin to campaign, I would say that there is a heightened responsibility to examine those. I would say that that responsibility becomes more heightened at the time he's elected. And you'll see that most of the cases out there in these Quo Varento actions, all of the ... not all of them, but the vast majority of them, the actions are initiated somewhere near the election, or when a felony conviction happens during the term of office. They happen shortly thereafter. So this is unusual. A one-year delay ... Yeah, there's no notice given to the state's attorney with those other actions. It probably was. That's correct. There is no notice of any other actions. You talk about any other cases, Judge? No, there was no notice. The state's attorney, I would say, stumbled on them in many of those situations, much like they did here. We raised it in the trial court. We believe that this action by the state's attorney was retaliatory for Mr. Farrell's activism. Essentially, as we understand it, and Mr. Farrell understands it, Judge, Mr. Farrell was involved in some Black Lives Matter protests. He was called in with other people to the state's attorney's office to discuss those protests. Someone at the state's attorney's office said, hey, I think that guy has a felony conviction, and the wheels began to turn, and they resulted in, ultimately, this cool warrant for action to be sought. So what would that date be? That date ... That date of filing a candidacy. I mean, you're saying that on your latches you've got to establish sleeping on rights. Correct, and that date, the state's attorney will tell you that that date was sometime in December of 2021, which would have been five or six months after the election. Well, counsel, isn't it just as important for the candidate to file a truthful statement of candidacy? Well, Judge, that's an argument that's been made very vigorously by the state's attorney. And I would suggest to you this. That is part of their own clean hands argument. I'll address it now. They would suggest to you that the, what they vehemently and repeatedly called the perjured statement of candidacy presents a, supports an unclean hands argument that would defeat any latches defense that we have here. I would say a couple of things on that. One, there's never been, there's never been any, there wasn't any discovery. There were no depositions or anything like that. There's never been any proof, and there isn't any proof in the record, that the formed statement of candidacy that a candidate fills out, and by filling out I mean fill in a couple of blanks and hand it in because the clerk asks all of the candidates to do so. There's no, there's no evidence in the record that that was intentionally falsified by Mr. Farrell. I believe that a good faith argument can be made and was made at the time that he believed he was eligible. I will get to that when we talk about the constitutional arguments, but I believe Mr. Farrell, I don't believe that statement of candidacy can be properly called false, much less intentionally false. And there's a case, a very clear case from the Illinois Supreme Court here from January of this year, January of 2022, PNC Bank v. Kuzmiris. And what that stands for, that case, among other things, is they specifically talk about the unclean hands defense. And they say in that case that to use the unclean hands defense, you have to raise it to the level of fraud. And I will, I've cited it later, it's a 2022 Illinois Supreme Court case. And it stands that, it stands for two propositions that are important here. One, latches can even be applied when the judgment's void. So it is a defense to even avoid judgment. So, and its second proposition it stands for is again, that unclean hands cannot be used as an effective defense unless you raise it to the level of actual fraud. I think we're far short here on Mr. Farrell's statement of candidacy. And I think that again is another red herring. But you're not suggesting that Mr. Farrell didn't remember his prior convictions? Absolutely not. And he's never denied the convictions. In this case, we've never denied the convictions. We admitted them in our answer to the complaint. We believe that based on, and you'll see it in my argument about the unconstitutionality of the statutory scheme, we believe there's a reasonable argument that Mr. Farrell is eligible despite the language of the township code. There's a split in authority here in Illinois. And there's only two Illinois appellate court cases. One is from 1980, Ryan v. Coles. And in that case, they specifically address a township office and they specifically find that for the equal protection purposes that there is no rational basis for the difference between constitutionally created offices and legislatively created offices. As you know, in the constitutional scheme here in Illinois, a felon, after serving his sentence, becomes immediately eligible to run for any constitutionally created office. So Mr. Farrell, upon completion of his sentence in 2010, could have immediately, without doing anything else, run for governor of the state of Illinois. He could not, at that same moment, run for any legislatively created offices such as municipal offices or township offices without getting a pardon from the governor. Ryan v. Coles holds that there is no rational basis. You're required in an equal protection analysis to have a rational basis for the difference between those two. And they don't. The competing case, and the state relies on this case, is People v. Hofer. That's a 2006 case in which they talk about they make the same equal protection analysis. They talk about the difference between constitutionally created offices and legislatively created offices. And they come to the conclusion that they find a rational basis for the difference in eligibility requirements. I find their reasoning wholly unpersuasive. Their reasoning, essentially distilled in a nutshell, is this. Legislatively created offices like municipal offices and township offices are lower level offices. They have much less scrutiny than a higher level constitutional office. Make the easy, obvious argument between governor and between township trustee. So their argument is because those lower level offices have what they opine to be less scrutiny, and because of the nature of the office, they found that there was less ability to sort of watch over those offices and look into the candidates as there would be with someone who was running for a constitutionally created office, that there was a rational basis for making the distinction between you serve your sentence and you're eligible for a constitutional office. You've got to go get a pardon from the governor after you've served your sentence to be eligible for any legislatively created office. I don't find that persuasive. I believe that the Ryan versus Coles case, which was law for now 40 years, I think is the more persuasive case. I would suggest that in this day of the easy accessibility to online information and the nature of legislatively created offices being more local offices, I would suggest that they are more closely scrutinized by the smaller cohort of the population that is governed by those offices. So, for example, in the case of Mr. Farrell, he's elected to a township trustee office. I think that people in that township certainly have the ability and are certainly much more information is much more accessible to them than back when the Hofer court back in 2006, I believe, or even when the Ryan versus Coles court was looking at it. I would suggest that those offices are the scrutiny available to the average citizen for those offices is equal to any scrutiny you have on a higher level office and the information is equally accessible. So I don't see any rational basis whatsoever for the difference between constitutionally created offices and legislatively created offices. That was one. Your time is up. I see the red light is going on. Thank you very much. And you'll have time in reply. Very well. Thank you. Thank you. Counsel, you may respond. Morning. My name is Scott Piles. I represent the people. May it please the court. Counsel, I will be brief. As you heard, counsel, for Mr. Farrell, he has no defense to the substantive merits of the Quo Veronto petition. That being that he purportedly ran for Joliet township trustee and that he was a convicted felon and that the township code, section 55-6, indicates that a person who has a felony conviction may not serve as a township trustee. The merits of the Quo Veronto petition filed by the people is not disputed. The fact that he's a convicted felon is not disputed and the fact that the township code exists is not disputed. The issues here today are that Mr. Farrell is raising three affirmative defenses to his quest to purportedly remain in office even though he does not meet the legislative mandated qualifications for said office, that being free of a felony conviction. Those three defenses are latches because it took the people six months to uncover the fact that Mr. Farrell filed a false statement of candidacy indicating under oath that he was in fact qualified to serve in the office of township trustee. Number two, he's suggesting that the township code provision that does not allow felons to serve in township office violates the Equal Protection Clause because the legislature clarified the municipal code and the election code to indicate pre-existing and existing Illinois law that if a person's rights were in fact restored that they could serve in those offices. Walker v. Epagua notes that the legislative amendment to the municipal code that added the paragraph talking about restorative rights simply just stated pre-existing and existing at the time that if a person does have their rights restored by pardon or by the governor that they could in fact then serve in that office. There's no longer a felony conviction if he receives a pardon. The impediment would be removed. And the third, which he did not address but it's in his brief, is that he would like this court to stay a ruling until there's action on his petition for pardon by the Illinois Prisoner Review Board whether or not he's going to in fact receive a pardon for six felony convictions for drugs and weapons charges in both Will and Cook County. Now, as I stated both in the trial court and I stated in my brief, I think it's commendable that Mr. Farrell has turned to the right side of the law and that he's no longer committing those offenses since his release from the Illinois Department of Corrections. It's good. And we certainly want to encourage that. But the issue here is can he serve in an elected capacity in the township of Joliet as a trustee? The answer to the question is no because the legislature does not allow convicted felons to serve in those slots. Just like they don't allow convicted felons to serve on school boards, they don't allow them to serve in municipal boards. The distinction that Mr. Farrell talks about is that a constitutional office, once you finish your sentence you can run for governor, the courts are very clear. There's a distinction made on why there is a difference between constitutional officers that have the media scrutiny of being in a constitutional office in Springfield with the news media, with every action scrutinized by other elected officials as opposed to being in a municipal or township office that does not have that scrutiny. That is the difference and that is the rationale used in the courts and frankly I think it's a reasonable and a rational basis to deny the equal protection argument here. Frankly, the other argument that's made with regard to the equal protection clause is again the wording distinction between the legislative change to the municipal code that put in a paragraph or sentence that says that you can serve if there is a restoration of rights or a pardon issued. The change with the law is frankly if you receive a pardon or if you get a restoration of rights, you are no longer considered to be a convicted felon. It's been forgiven. That impediment is removed. That change in the law didn't really do anything other than essentially being specific about what the law is, which essentially says that if you have a conviction and it is removed by the executive, you no longer have that felony conviction to serve. Let me go further. If there is a restoration of rights to the granting of a pardon, would you be here saying Mr. Carroll cannot serve today as a trustee? No. Why? Well, let me back up a little bit. If you look at the statute, the statute says at the time of the taking of the oath you are not eligible. So, no. If he receives a pardon today, I would suggest that I would probably still be here because at the time that he was required and he took the oath, he was not eligible for the office. I stated at the trial court if the case was pending and he received a pardon, I would pack up my bags and go home because the impediment is removed. He would still be in office, then you just argued a minute ago. Well, it's very difficult because Mr. Farrell does have a certificate of election. It's our position that at the time he took the oath, he was not eligible to serve in that office, but he is in fact right now exercising the powers of Joliet Township trustee. So you wouldn't bring this legal question to court? Is it prosecutorial discretion  to court? Justice, if he received a pardon today, I'm not sure what the position of the office would be. To be fair, there is a section in the statute that says at the required time of taking of the oath, that's really the issue. Is he eligible? When he took the oath, we were unaware that he had lied on his statement of candidacy. They spent a lot of time in their briefs saying there was an objection to him running, there was an objection during the campaign, there was an objection to him entering the oath. It's because frankly the election code sets up some protections that a felony conviction is an ineligibility, but you have to know the statute in order to be able to answer that question. No, the form does not have the qualifications of the office. I think we're setting the bar pretty low though if we're going to allow somebody to serve in an elected office and for them not to know they vote on budgets, there are literally millions of dollars that flow through a township. I think are we setting the bar so low that a person that runs for office does not know the base qualifications? I would suggest that we're not here in a criminal case. Well, I mean that, I don't think it's a criminal case. So that's why in the record my letter to Mr. Farrell lays out what we try to do here. It's in the record. When we were notified I called the township attorney and I advised him of the impediment. You have a trustee that has an issue. Talk to him and see what the issue is. If you're a school board employee, that person cannot serve on the regional board. It's not a matter of fairness. It's in the statute that says if you're an employee of a school district you cannot serve in that capacity. It's a disqualifier to hold the office. It was unable to take that oath because of the felony conviction. The election is void ab initio. It's void at its inception. As to whether or not something is retroactive and we're not at that point yet because Mr. Farrell has not received a pardon or has not been a restoration of rights. He would be a candidate for that relief. It's unknown. But the problem is that right now we have somebody that's purportedly trying to exercise the powers of Joliet Township trustee and he is not qualified by virtue of his felony conviction. He's voting on these budgets, he's voting on these ordinances,  amendments that were made that threats from the state's attorney's office and he wasn't getting paid and so forth. Well, the difficulty with that is that's not true. Mr. Farrell put forward an affidavit in this case indicating he wasn't getting paid. What does that have to do with this case? When there's been an opportunity to put something factual forward, it's not correct. Mr. Pardo will raise the argument that I prevented him from getting paid, but when we check, Mr. Farrell continued to get paid. It's in the record on the motion to reconsider, Mr. Farrell continued to get paid, even though in the affidavit he said that something was under oath and it wasn't correct. Justice, I would suggest that it goes to... I'm just trying to correct the record. Because Mr. Pardo raised in his argument I wanted to address that. I think this case is relatively simple. I don't think that any of the affirmative defenses will overcome his disqualification as a convicted felon to serve on this board. If Mr. Farrell had done it the right way, which is go get the pardon first, not file for the pardon after the quorum was filed. Get the pardon first, then run for office, there would be no objection. Mr. Farrell filed a false statement of candidacy, then he took the oath, then when he was confronted with the fact that he can't serve, then he files for the pardon. It's kind of do it the reverse. It doesn't work. I think the legislative mandate is very clear. And what Mr. Pardo and counsel for Mr. Farrell wants you to do, he wants you to invalidate a requirement under the township code on the basis of equal protection that convicted felons can serve in township because there was a wording change in the municipal code that treats municipal offices and township offices different in their argument. I would suggest there is no difference. The wording change in the municipal code is relatively clear. It just clarifies existing law. And I would submit to the court that it was void affinitio at the beginning. There has been no change in that position by the Illinois prisoner review board. And I would ask that the ruling of the trial court be affirmed. Thank you. Thank you, counsel. I want to get this out of the way. This has been the state's method the entire case. Derby up Mr. Farrell and then make their legal argument. He's been called a career criminal. He's been called all other forms of names by the state. This affidavit about getting paid was true at the time that he gave it. They suspended his pay check. The supervisor of the township started those pay checks. It was after he submitted that affidavit. He did not submit a false affidavit and he is not a career criminal. So put that aside. I'd like to address three things briefly in the reply. First, real quickly, the rule 19 Supreme Court violation is a red herring. I don't know if you know this, but the state's attorney is the plaintiff in this case. They had notice. We didn't need to give anybody any notice other than that. Finally, late notice and we gave it after they raised it at the last minute in the argument before the court on the summary of the Supreme Court case. It's in the record. That notice was good notice to the AG. They have never sought to intervene in this case. I've cited Supreme Court cases here in my brief. Late notice can be good notice. The court can also permit late notice to be compliance with rule 19. And the Supreme Court has said it's not. So that rule 19 violation is a red herring. Secondly, let's put this issue of retroactivity to bed. Walker v. Agpawa, an Illinois Supreme Court case from 2021, stands for the proposition that retroactivity is valid. Mr. Agpawa was elected to the office. He was reinstated to that office. There was a motion filed in court unopposed by the state after that decision came down that said we essentially called the case and moved. And the challenge was over. So this idea that retroactivity is valid, I believe that, one, the governor has unlimited power under our Constitution to give pardons and other relief without limit. And there's nothing in the statute as amended. And as you know, and it's in our briefs, the municipal code and the election code were both amended. The legislature amended the municipal code, but they didn't amend the township code. So we can talk all at once about how the municipal code and the township code are the same thing. They're not. The legislature didn't see them that way. They didn't see fit to make the same amendment to the constitution. So  you can't run for municipal office. You can't run for township office if you're a convicted felon, period. And I would say my argument has two prongs on the unconstitutionality. There's no rational basis for the difference between constitutional created offices and legislative created offices. There is a distinction between a municipal office and a township office. Both legislatively created, both similar kinds of offices. The legislature amended the municipal code and didn't amend the township code. There is a distinction that violates equal protection clause. There's no rational basis for the difference between  offices and legislative created offices. There is a distinction that violates equal protection clause. There is a distinction that violates legislative created offices and legislative  offices. Finally, you can send it back with an order staying the trial court proceedings until such time as the petition for pardon of restoration of rights is decided. That hearing is set for Thursday, October 6th. Thank you. »» Thank you.